**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **DR. TAMARA SANDERFIELD,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:18-cv-00512** |
| | ) | **Judge Aleta A. Trauger** |
| **NANCY SNOWDEN, CEO, NCGS,** | ) | |
| **et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM

*Pro se* plaintiff Tamara Sanderfield has filed a civil Complaint (Doc. No. 1) against

defendants Nancy Snowden, CEO of NCGS; NCGS d/b/a Mindseeker; Kayode Balogun, U.S.

Government Federal Procurement Agent; and Illumina, Inc, a/k/a "The Illuminati, Inc.." The

plaintiff purports to assert claims under numerous federal statutes, including: 42 U.S.C. § 1983,

based upon alleged violations of the Fourth, Fifth, and Fourteenth Amendments to the United

States Constitution; 42 U.S.C. § 1985, for conspiracy to interfere with civil rights; Title VII of

the Civil Rights Act of 1964; 17 U.S.C. § 501(a), for copyright infringement; 18 U.S.C. § 2511,

for eavesdropping and prohibited interception and disclosure of wire, oral, or electronic

communications; 47 U.S.C. §§ 223 and 227, for obscene or harassing telephone calls and

falsifying caller ID; 18 U.S.C. § 241, for organized gang stalking; 18 U.S.C. § 242, for

deprivation of rights under color of law; 18 U.S.C. § 1962, for civil racketeering conspiracy; 18

U.S.C. § 875(c), for violations of laws pertaining to interstate communications; 18 U.S.C. §

1030, for fraud in connection with computers; 47 U.S.C. § 222(f)(1), for violation of common

carrier regulations; 18 U.S.C. § 1801, for video voyeurism; 18 U.S.C. § 229, for "chemical

weapons/prohibited activities" (Doc. No. 1, at 4); 17 U.S.C. § 111(b)(1)(2)(3) [sic], for "infringement of secondary transmission of primary transmission to controlled group" (Doc. No. 1, at 5); 17 U.S.C. § 1101, for "[u]nauthorized fixation and trafficking in sound recordings and music videos"; 18 U.S.C. § 2252, for activities relating to the sexual exploitation of minors; 18 U.S.C. § 1590, for human trafficking and forced labor; 18 U.S.C. § 911 and 915, for "false personation" as a citizen of the United States and "false personation by foreign diplomats, consuls, or officers (Doc. No. 1, at 6); and 18 U.S.C. §§ 1701, 1702, for general obstruction of mail and obstruction of correspondence.

Because the plaintiff proceeds *in forma pauperis*, the court must conduct an initial review of the complaint pursuant to 28 U.S.C. § 1915(e)(2). For the reasons set forth herein, the Complaint will be dismissed as frivolous and for failure to state a claim for which relief may be granted.

## I.      Initial-Review Screening Standards

The court is statutorily required to conduct an initial review of the complaint of a plaintiff proceeding *in forma pauperis* and to dismiss it prior to service of process if it is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2)(B). The screening procedure established by § 1915(e) applies to *in forma pauperis* complaints filed by non-prisoners as well as to those filed by prisoners. *McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

Generally, an *in forma pauperis* complaint will be permitted to proceed if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009)). Conversely, the action must be dismissed as frivolous when it is "based on an indisputably meritless legal theory" or when the "factual contentions [on which it relies] are clearly baseless." *Anson v. Corr. Corp. of Am.*, 529 F. App'x 558, 559 (6th Cir. 2013) (quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989)). Thus, when a complaint alleges facts that are "clearly baseless," "fanciful" or "delusional," it may be dismissed as frivolous. *Denton v. Hernandez*, 504 U.S. 25, 32–33 (1992) (citing *Neitzke*, 490 U.S. at 327–28). A complaint that is legally frivolous "*ipso facto*" fails to state a claim upon which relief can be granted. *Hill*, 630 F.3d at 470 (citing *Neitzke*, 490 U.S. at 328–29).

"*Pro se* complaints are to be held to less stringent standards than formal pleadings drafted by lawyers, and should therefore be liberally construed." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011). *Pro se* litigants, however, are not exempt from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot create a claim which [a plaintiff] has not spelled out in his pleading.") (internal quotation marks and citation omitted). *Cf. Pliler v. Ford*, 542 U.S. 225, 231 (2004) ("District judges have no obligation to act as counsel or paralegal to *pro se* litigants."); *Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants. Not only would that duty be overly burdensome, it would transform the courts from neutral arbiters of disputes into advocates for a particular party. While courts are properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue.").

**II.    Review of the Complaint**

The plaintiff alleges the existence of a widespread conspiracy of harassment and discrimination, beginning in 2014. The Complaint is long on speculation and generalities but short on specific facts. The plaintiff first alleges that, while employed as a Drug Safety Physician by NCGS in Charleston, South Carolina in October or November 2016, she logged into her personal email account while at work, and her employer "confiscated 79,000+ emails with some kind of computer malware." She alleges various forms of discrimination while employed by NCGS in 2016, including the denial of Drug Safety training and the use of "racial intimidation tactics." (Doc. No. 1, at 15.)

Because of this harassment, she sought other employment, which led to what she refers to as the "Mind Seeker trajectory." (*Id.* at 16.) Mind Seeker appears to be a firm that hires physicians for online "CDI" positions around the country, or it masquerades as such. The plaintiff maintains that her former employer, NCGS, was actually doing business as Mind Seeker. While she was out of town on recruitment interviews, agents of NCGS, doing business as Mind Seeker, entered her home to place cameras and other monitoring devices around her residence. Her youngest son's homeroom teacher was involved in the conspiracy and may have confiscated her son's house key to facilitate the NCGS agents' breaking into her home. She tried to report the cameras she found in her home to the police, but she discovered that the owner of the home she was renting and the police officer were also involved in the conspiracy with NCGS/Mind Seeker.

While working for Mind Seeker from January through May 2017, she endured "extreme cyber surveillance, cyber bullying, and cyber harassment" as a result of Mind Seeker's "supplanting malware" into her desktop computer during WebEx meetings that were supposed to

be job-related. This malware "allowed an unlimited number of people" access to the plaintiff's emails and connected her computer to Skype, thus allowing "this same unlimited number of people . . . to also listen to all the sounds in [her] home via Skype audio." (*Id.* at 18.)

The result of the conspiracy was to "tamper with [her] work productivity to produce errors, and then send [her] vicious malignant emails through the [hospital] email system, which could also be viewed by all who could witness the other emails," and "create errors . . . in the charts [she] reviewed." (*Id.* at 21.) The plaintiff also believes that, as a result of this conspiracy, she was "intentionally placed" in South Carolina from Michigan to put a stop to her lobbying and political activities in Michigan.

The plaintiff states that she has been unemployed since May 2017. She has applied for "thousands of jobs," most of which she believes were "fake and created by them." (*Id.* at 24.) When she has tried to apply for jobs that are not "fake," "they used cyber surveillance techniques" to delete her applications. (*Id.* at 27.) Mind Seeker's alleged control over the "internet of things" and advanced cyberstalking and harassment have left her "unemployed, homeless and struggling to survive." (*Id.* at 25.) The plaintiff states:

> 52. The Chinese hackers [who are somehow connected with the conspiracy] inserted extensive amounts of virus infected images into my smartphone taking up 90% of the memory capacity and this somehow assisted them in controlling the cameras, internet connection, and Roku devices in my home.
>
> 53. The property owner of the property I resided in was also involved in the Mind Seeker trajectory and did assist in the harassment.
>
> 54. They have blocked all incoming and outgoing email communications.
>
> 55. They have blocked all incoming and outgoing calls.
>
> 56. They have disconnected important phone calls . . . in the middle of the conversation.

> 57. They have followed me around by manipulating the location on/off switch on my smartphone. . . . They have blocked me from obtaining gainful employment and through tracking my location via the smartphone; they had my car repossessed from a grocery store parking lot . . . .

(*Id.* at 28.) The plaintiff does not precisely identify who "they" are.

The Complaint continues in this vein for an additional dozen pages, toward the conclusion of which the plaintiff states that she began drafting her Complaint in September 2017 and concluded it in May 2018. She now affirms that the conspirators involved in Mind Seeker identify themselves as "The Illuminati." (*Id.* at 34.) She believes that one of the goals of the conspiracy, in addition to the "smear campaign" against her, might be to recruit her into the organization. She claims that it has been revealed to her that The Illuminati, Inc. "are U.S. Government contractors for the Department of Defense, the Department of Health and Human Services, and the Department of Agriculture." (*Id.* at 35.)

The court finds these and the other allegations in the Complaint to be clearly fanciful, baseless, and delusional. Many of the statutes cited by the plaintiff do not create a private cause of action. Even for those that do, the plaintiff's factual allegations are not sufficiently specific to establish that any particular defendant violated any federal statute. The Complaint fails to establish that any of the individual defendants are "state actors" for purposes of the plaintiff's claims under 42 U.S.C. § 1983 and 1985; even if it did, the Complaint does not identify specific facts showing that any named defendant violated the plaintiff's constitutional or other rights. The plaintiff does not allege specific facts showing that she was subject to an adverse employment action because of a protected characteristic for purposes of Title VII, nor has she alleged facts suggesting she exhausted administrative remedies as required by that statute. In short, the factual allegations in the Complaint fail to "state a claim to relief that is plausible on its face." *Hill*, 630 F.3d at 470.

**III.     Conclusion**

The Complaint will be dismissed as frivolous and for failure to state a claim for which relief may be granted. An appropriate order is filed herewith.

ENTER this 5th day of July 2018.

ALETA A. TRAUGER
United States District Judge